**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EQUITY BUILDERS AND CONTRACTORS INC., Plaintiff, | ) | Case No. 05 C 1937 |
| vs. | ) | |
| RONALD L. RUSSELL, JR., RONALD L. RUSSELL, SR., R. RUSSELL BUILDERS, INC., LUIS V. GODUCO, GODUCO DESIGN GROUP, LTD., GREG WELTER, and TAMARA WELTER, Defendants. | ) | Hon. James B. Moran<br>**JURY TRIAL DEMANDED** |

**JOINT REPLY OF RONALD RUSSELL, SR., RONALD RUSSELL, JR. AND R. RUSSELL BUILDERS, INC. IN SUPPORT OF THEIR TO DISMISS THE CROSS-CLAIMS OF GREG AND TAMARA WELTER**

## I. The Welters' First Cross-Claim Against Russell Builders and Ron Russell, Jr. – Intentional Fraud – Must Be Dismissed.

As set forth in their motion to dismiss, the Russell Defendants believe that the Welters' first cross-claim (which purports to state a claim for fraudulent misrepresentation) fails for two independent reasons: (1) the claim was not pled with sufficient particularity, as required by Fed. R. Civ. P. 9(b); and (2) the alleged mis-statements were, if anything, non-actionable statements of opinion rather than false statements of fact.

In their response, the Welters concede (as they must) that they are required to plead their first cross-claim with particularity under Fed. R. Civ. P. 9(b). The Welters argue, however, that their first cross-claim satisfies that requirement. The Welters also claim they were entitled to rely on statements of opinion made by the Russell Defendants.

The Russell Defendants will not repeat at length the arguments set forth in their motion to dismiss. This Court is already well-acquainted with Rule 9(b) and the requirement that fraud claims be based on statements of fact. The Court does need further extensive argument to evaluate whether the Welters' first cross-claim satisfies those requirements. Thus, in this reply, the Russell Defendants wish to make just three points regarding this claim.

***First***, according to the Welters, the Russell Defendants' supposed misrepresentations consisted of: (1) an oral statement by Ron Russell, Jr.; (2) a written statement by Ron Russell, Jr.; and (3) a copyright notice on a plan. It is surprising that the Welters have not made any effort to place the actual text of those alleged statements before the Court. In the case of the written statement and the copyrighted plan, it should be very easy for the Welters to present those statements to the Court; the Welters could simply attach the relevant documents to their cross-complaint. If the Welters had done so, this Court could examine the exact words at issue and determine whether those statements are actionable. The Welters have not done that, and they should be required to do so under Rule 9(b). The Russell Defendants are highly confident that if the Welters are required to identify the alleged mis-statements with more particularity, this claim will quickly be dismissed.

***Second***, as stated in the Russell Defendants' motion to dismiss, Ron Russell, Jr. could not have intentionally made a false statement of fact in March 2004 when he supposedly stated that the Russell Design did not infringe on the Equity Design. Simply put, the truth or falsity of that statement was not ascertainable in March 2004. Rather, the truth or falsity of that statement is contingent upon the outcome of this case. The Welters attempt to avoid this problem by arguing that they are entitled to plead in the alternative. That argument, however, misses the point. The Russell Defendants are not claiming that the Welters' fraud claim fails because the Welters have made inconsistent allegations. Rather, the problem with the Welters' fraud claim is that no one knows

(even today) whether the Russell Design infringes on the Equity Design. That remains an open question, and will only be resolved at the conclusion of this case. Thus, it was impossible for Ron Russell, Jr. to have intentionally and knowingly made a false statement of fact in March 2004.

***Third***, the Welters claim they were entitled to rely on statements of opinion made by the Russell Defendants regarding whether their home design infringed on the Equity Design. According to the Welters, the Russell Defendants were their builders, and the Welters were therefore entitled to rely on the Russell Defendants on all matters relating to their home. With respect, that argument does not hold water. Statements of opinion are actionable if "the defendant holds himself out or is understood as having special knowledge of the matter that is not available to the plaintiff, so that his opinion becomes in effect an assertion summarizing his knowledge." *Power v. Smith*, 786 N.E.2d 1113, 1118 (Ill. App. Ct. 4th Dist. 2003). Nothing in the Welters' cross-claim suggests that the Russell Defendants held themselves out as having specialized knowledge regarding copyright infringement, or that the Welters believed the Russell Defendants had such knowledge. Similarly, nothing in the Welters' cross-claim suggests that the Russell Defendants were in a "unique" position to evaluate copyright issues. In fact, just the opposite; as the Welters acknowledge: (1) they personally viewed the Equity Home; (2) they secured brochures with pictures and information regarding the Equity Design; and (3) they were aware of possible copyright issues regarding the Equity Design (certainly aware enough to make inquiries regarding the two designs). Accordingly, the Welters were fully capable of evaluating any copyright issues (or at least retaining counsel to do so). Simply put, the Welters have not alleged – because they cannot – facts sufficient to turn the Russell Defendants' opinion regarding copyright infringement into an actionable statement.

## II. The Welters' Negligent Misrepresentation Cross-Claim Fails Under The *Moorman* Doctrine.

As the Russell Defendants pointed out in their motion to dismiss, the Welters' second cross-claim (which purports to state a claim for negligent misrepresentation) fails for two reasons: (1) the Welters have not identified a false statement of material fact; and (2) the negligent misrepresentation claim is barred under the economic loss doctrine articulated in *Moorman Manufacturing Co. v. National Truck Co.*, 435 N.E.2d 443, 450 (Ill. 1982).

In response to the first argument, the Welters claim that the statements at issue were statements of fact rather than statements of opinion. The Russell Defendants have addressed that argument in Section I of this reply, and incorporate those arguments herein by reference.

The Welters responded to the Russell Defendants' second argument (*i.e.* the argument based on the *Moorman* doctrine) by claiming that the "commercial information provider" exception to the *Moorman* doctrine applies in this case. According to the Welters, the Russell Defendants were "commercial information providers" because, in addition to selling a tangible product to the Welters (*i.e.* their house), the Russell Defendants also provided information to the Welters (*i.e.* the design for their house).

The Welters are wrong on this point. Illinois courts have long recognized that parties who sell, build or manufacture tangible products (such as houses) are not commercial information providers – even if those parties also provide information or guidance to customers in the process of selling, building or manufacturing the tangible products at issue.[1]

---

[1] *See, e.g.*, *Orix Credit Alliance v. Taylor Mach. Works, Inc.*, 125 F.3d 468, 475 (7th Cir. 1997) ("Courts have consistently held that manufacturers of tangible noninformational goods – such as chemical compounds, roofing materials, or computer systems – are not in the business of supplying information."); *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 823 N.E.2d 168, 179 (Ill. App. Ct. 1st Dist. 2005) (collecting cases and noting that "manufacturers and sellers of tangible goods such as computers and construction materials" cannot be liable for negligent misrepresentation).

The Illinois Supreme Court has held that architects and engineers who are retained to design and construct buildings are not commercial information providers. *See 2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346 (Ill. 1990) (holding that architect's design was incidental to the construction of building) ("*2314 Lincoln Park West*"); *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 679 N.E.2d 1197 (Ill. 1997) (engineer's plans and drawings were incidental to construction of underground water system). The reasoning in those decisions is fully applicable to contractors (such as the Russell Defendants) who build homes.

The Welters ask this Court to disregard the Illinois Supreme Court's decisions in *2314 Lincoln Park West* and *Fireman's Fund*, and rely instead on the First Appellate District's decision in *Tolan & Son, Inc. v. KLLM Architects, Inc.*, 308 Ill.App.3d 18 (1st Dist. 1999). But *Tolan & Son* does not help the Welters. In *Tolan & Son*, the First District acknowledged the rule established in *2314 Lincoln Park West* and *Fireman's Fund*. The First District then went on to hypothesize that the *2314 Lincoln Park West/Fireman's Fund* rule would not apply in instances where an architect or engineer is retained by a client to provide advisory services – but the scope of retention does not extend to actually building a structure.

> [I]f an architect or engineer is engaged ***solely*** to provide information based upon an evaluation and the value of the services lies in its analytical work rather than a tangible end product, it ***could*** be considered to be in the business of supplying information for the guidance of others.

308 Ill.App.3d at 30, 719 N.E.2d at 298 (emphasis added). Thus, *Tolan & Son* stands for two propositions: (1) a company in the construction industry that provides information to a customer and also provides a final, tangible product (such as a house) is not a commercial information provider; and (2) a company in the construction industry that provides only advisory services might (under some circumstances) be a commercial information provider.

In this case, the Welters readily acknowledge that the Russell Defendants provided the Welters with both information ***and*** a tangible product (their house). Accordingly, *2314 Lincoln Park West* and *Fireman's Fund* are controlling here, and the hypothetical scenario described in *Tolan & Son* does not apply to this case. Those decisions, coupled with the rule that the commercial information provider exception must be narrowly construed, *see, e.g., Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, No. 02 C 4801, 2004 WL 1149397, at *18 (N.D. Ill. May 20, 2004), demonstrate that the exception does not apply here. Accordingly, the Welters' claim must be dismissed.

## III. The Welters' Third Cross-Claim Fails As A Matter Of Law.

The Welters' third cross-claim is styled as a claim for "negligence/contribution." In their motion to dismiss, the Russell Defendants presumed that this cross-claim was a common law negligence claim. The Russell Defendants moved to dismiss this claim under the *Moorman* doctrine. In their response, the Welters attempt to escape the *Moorman* doctrine by arguing that their third cross-claim is not a pure negligence claim, but is really a claim under 740 ILCS 100/4 (the Illinois contribution act). That comes as a surprise to the Russell Defendants, because nothing in the third cross-claim purports to invoke 740 ILCS 100/4.[2]

The Welters cannot save this claim, however, by calling it a contribution claim. There is no such thing as a contribution claim between alleged infringers in an action under the Copyright Act.

---

[2] The Welters cite *Cirilo's, Inc. v. Gleeson, Sklar & Sawyers*, 154 Ill.App.3d 494, 507 N.E.2d 81 (1st Dist. 1987), for the proposition that the *Moorman* doctrine does not apply to contribution cross-claims. To the extent that *Cirilo's* can be read to stand for such a broad proposition, the Russell Defendants believe that *Cirilo's* was wrongly decided. The policy reasons cited by the Supreme Court in creating the *Moorman* doctrine (*i.e.* that contractual relationships between parties could be disrupted and displaced if additional and unbargained-for obligations and duties were imposed under tort law) apply with equal force in the context of cross-claims and third-party claims. Indeed, the *Moorman* doctrine would lack teeth if parties could avoid its application simply by re-casting "negligence" claims as "negligence/contribution" claims.

The rule with respect to contribution claims is well settled: a defendant held liable under a federal statute has a right to contribution from another who has also violated the statute ***only*** if such right arises through: (1) the express or implicit creation of a right of action by Congress; or (2) the power of the courts to formulate federal common law. *See, e.g., Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638 (1981); *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO,* 451 U.S. 77 (1981).

This rule (the *Texas Industries/Northwest Airlines* rule) has been enforced and embraced by the Seventh Circuit. *See, e.g., Anderson v. Griffin*, 397 F.3d 515, 523 (7th Cir. 2005) ("Courts have become reluctant to recognize a right of contribution as a matter either of federal common law or of statute. The reluctance is understandable. A right of contribution is not required to achieve either the compensatory or the deterrent objectives of the law.") (internal citations omitted – collecting cases); *Donovan v. Robbins,* 752 F.2d 1170, 1179 (7th Cir.1985) ("Where contribution is sought by one who has had to pay damages for violating a federal statute, the scope and limitations of the right of contribution are invariably treated as questions of federal rather than state law.") (internal citations omitted).

When the *Texas Industries/Northwest Airlines* rule is applied to this case – as it must be – it becomes apparent that the Welters have no right to seek contribution from the Russell Defendants.

***First***, nothing in the Copyright Act creates a right of contribution. When Congress enacted the Copyright Act, it created causes of action for copyright holders to sue infringers – either for direct infringement or contributory infringement. However, the Copyright Act does not create a cause of action for copyright infringers to seek contribution from other alleged infringers. That omission is striking because in other statutory schemes, Congress did provide for such contribution claims. *See, e.g.*, CERCLA, 42 U.S.C. § 9613(f)(1). Simply put, if Congress had wanted defendants

in infringement actions to have a right of contribution, Congress could easily have provided for such claims in the Copyright Act. Congress chose not to do so, and the Russell Defendants respectfully submit that this Court should refrain from creating remedies that Congress declined to create. *See, e.g., Premier Capital Mgmt., LLC v. Cohen*, No. 02-C-5368, 2005 WL 1564926, *2 (N.D. Ill. July 1, 2005) ("[I]n light of § 77o's [of the 1933 Securities Act] lack of an explicit right of contribution, the court declines to imply one.").

***Second***, the Welters have not identified any authority holding – or even suggesting – that a federal common law right to contribution exists in copyright actions. Indeed, those courts that have considered the question have squarely rejected the notion of such a federal common law right. *See, e.g., Lehman Bros., Inc. v. Wu*, 294 F. Supp. 2d 504 (S.D.N.Y. 2003).

The Welters' proposed cross-claim cannot be squared with the Supreme Court's holdings in *Texas Industries* and *Northwest Airlines*. Moreover, the rule proposed by the Welters – which would incorporate 51 different notions of contribution and indemnity into the federal Copyright Act – would create chaos in the field of federal copyright law. In *Donovan*, the Seventh Circuit rejected a similar argument to import state law notions of contribution into ERISA in language that resonates in this case:

> It [is] extremely unlikely that Congress would have wanted ERISA fiduciaries to be subject to the vagaries of state contribution law – a body of law so various, mutable, complex, and uncertain that its application to ERISA fiduciaries might well result in subjecting them to inconsistent duties and a risk of multiple liability. ERISA fiduciaries are entitled to a uniform nationwide rule (we realize that such a rule may not emerge till the Supreme Court decides the question).

752 F.2d at 1180. The Welters ask this Court to reject such reasoning on the basis of two decisions. However, neither decision helps them.

The Welters cite *Salton, Inc. v. Philips Domestic Appliances and Personal Care B.V.*, 391 F.3d 871 (7th Cir. 2005), for the proposition that contribution claims are permitted in actions under

the Copyright Act. But *Salton* contains no such holding. Not even close. In fact, *Salton* contains no discussion of the issue whatsoever. Rather, *Salton* involved the question of whether a particular defendant was an indispensable party under Fed. R. Civ. P. 19. In that case, Philips had filed two different sets of claims against E&E. In addressing the first set of claims (which involved a copyright infringement claim as well as various state law tort claims), the Seventh Circuit noted:

> [T]he victim of a tort is entitled to sue any of the joint tortfeasors and recover his entire damages from that tortfeasor. The defendant ***may*** have a right to contribution (i.e., to a sharing of the pain) from the other tortfeasors, but the victim is not required to sue more than one of his oppressors.

*Id.* at 877 (emphasis added). The Welters overlook the significance of the highlighted word "***may***." The Seventh Circuit was not holding that all defendants in all types of tort claims (whether under state or federal law, whether under statutory or common law) have an absolute right to contribution. On the contrary, the Seventh Circuit was simply pointing out (without deciding) that defendants in ***some*** types of tort claims (*e.g.* a state law tort action) ***might*** have a right to seek contribution.

The Welters also ask this Court to rely on *Foley v. Luster*, 249 F.3d 1281 (11th Cir. 2001), a decision that has never before been cited outside the Eleventh Circuit. In that case, the Eleventh Circuit permitted a defendant in a copyright infringement action to assert a state law contribution claim. The Russell Defendants respectfully submit that *Foley* was wrongly decided, and they urge the Court to disregard that decision. Simply put, *Foley* cannot be reconciled with the *Texas Instruments/Northwest Airlines* rule. Interestingly, in *Foley*, the Eleventh Circuit conducted a traditional federal preemption analysis, and permitted the state law contribution claim on the basis of that analysis. The Eleventh Circuit did not even mention – much less discuss, analyze, or distinguish – *Texas Instruments* or *Northwest Airlines*. Accordingly, *Foley* carries no weight in analyzing the impact of those decisions on the Welters' cross-claim.

**<u>Conclusion</u>**

For the reasons set forth above and in their motion and supporting memorandum, Ronald Russell, Sr., Ronald Russell, Jr. and R. Russell Builders, Inc. respectfully move the Court pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the cross-claims asserted against them by Greg and Tamara Welter. Defendants also request entry of an award of costs in their favor.

September 1, 2005

Respectfully submitted,

By: [signature]

Mark W. Daniel, Esq.
John R. Zemenak, Esq.
Timothy D. Elliott, Esq.
RATHJE & WOODWARD LLC
300 East Roosevelt Road, Suite 300
Wheaton, Illinois 60187
Telephone: (630) 668-8500
Facsimile: (630) 668-7350

Attorneys for Ronald Russell, Sr., Ronald Russell, Jr. and R. Russell Builders, Inc.

## CERTIFICATE OF SERVICE

I, Timothy D. Elliott, an attorney, hereby certify that I served a true and correct copy of the foregoing **JOINT REPLY OF RONALD RUSSELL, SR., RONALD RUSSELL, JR. AND R. RUSSELL BUILDERS, INC. IN SUPPORT OF THEIR TO DISMISS THE CROSS-CLAIMS OF GREG AND TAMARA WELTER** on the 1st day of September, 2005, upon:

***Via Facsimile and First Class Mail:***

John P. Cooney, Esq.
10426 W. 163rd Place
Orland Park, IL 60460

Stephen M. Cooper, Esq.
117 South State Street
Geneva, IL 60134

David H. Levitt
Hinshaw & Culberton
222 N. LaSalle Street, Suite 300
Chicago, IL 60601

Timothy D. Elliott