

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EQUITY BUILDERS AND            )
CONTRACTORS, INC., an Illinois )
corporation,                   )
                               )
            Plaintiff,         )
                               )
      vs.                      )      No. 05 C 1937
                               )
RONALD L. RUSSELL, JR.,        )
individually, et al.,          )
                               )
            Defendants.        )

## MEMORANDUM OPINION AND ORDER

Plaintiff Equity Builders and Contractors ("Equity") brought an action alleging violation of the Federal Copyright Act of 1976, 17 U.S.C. Sec. 101, against defendants Ronald L. Russell, Sr., Ronald L. Russell, Jr., and R. Russell Builders, Inc. (collectively "Russell"); Luis V. Goduco and Goduco Design Group, Ltd. (collectively "Goduco"); and Greg Welter and Tamara Welter (collectively "Welter"). Goduco denied Equity's allegations and, alternatively, cross-claimed against Russell and Welter for contribution. Russell and Welter seek to dismiss Goduco's cross-claim. Additionally, Welter denied such allegations and, alternatively, cross-claimed against Russell for intentional misrepresentation, negligent misrepresentation, negligence and contribution, and against Goduco for negligent misrepresentation, negligence and contribution. Russell moves to dismiss Welter's cross-claims against them, and Goduco moves to dismiss the negligent misrepresentation claim against them.

In a motion to dismiss under FED.R.CIV.P. 12(b)(6), we must accept the complaint's well-

pleaded factual allegations as true, including the inferences reasonably drawn from them. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir.1990). The complaint should be dismissed only if the plaintiff "failed to allege any set of facts upon which relief may be granted." *Id. See also* Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## I. Goduco's Cross-Claim

Goduco denies any liability to Equity, and in the alternative claims it is entitled to contribution from Russell and Welter to the extent that it pays more than its pro rata share of liability. Welter denies liability to Equity or Goduco, and requests dismissal of Goduco's cross-claim. Similarly, Russell requests dismissal of Goduco's claim, arguing no right of contribution in a copyright infringement action and, alternatively, insufficient pleading of the cross-claim. For the reasons set forth below, we grant Welter's and Russell's motions to dismiss Goduco's cross-claim for contribution.

### A. Contribution

At common law there was no right to contribution among joint tortfeasors. Northwest Airlines, Inc. v. Transp. Workers Union of America, AFL-CIO, 451 U.S. 77, 86 (1981). And although many states have since recognized the right to contribution in various claims (*id.*), such right is not automatic. Where, as here, contribution is sought by a defendant who may be found liable for violating a federal statute – The Federal Copyright Act of 1976 – the "scope and limitations of the right of contribution are invariably treated as questions of federal rather than state law." Donovan v. Robbins, 752 F.2d 1170, 1179 (7th Cir.1984) (rejecting the applicability of Illinois state law in determining the right of contribution under ERISA). Therefore, a contribution claim is appropriate only if the Copyright Act itself creates such a right, or the right of contribution inheres as a matter of federal common law. *See* Northwest

Airlines, 451 U.S. at 1580 (finding no right of contribution under the Equal Pay Act or Title VII); Ho-Chunk Nation v. J.C. Penney Co., Inc., 1999 WL 495899 (N.D.Ill.1999) (finding no right of contribution under the Indian Arts and Crafts Act).

Neither the Supreme Court nor the Seventh Circuit Court of Appeals has specifically addressed whether there is a right of contribution under the Federal Copyright Act.[1] Other courts have expressly held that there is no right of contribution under the federal copyright scheme. *See* Artista Records, Inc. v. Flea World, Inc., 356 F.Supp.2d 411, 416 (D.N.J.2005); Lehman Bros., Inc. v. Wu, 294 F.Supp.2d 504, 504 (S.D.N.Y.2003). A Georgia court dismissed the argument that because contributory liability in copyright law is generally judge-made, as opposed to explicit in the statute, the courts should imply a right of contribution amongst contributory or vicarious infringers. Johnston v. Smith L, 1997 WL 584349 (N.D.Ga.1997). In doing so, the Johnston court cited the Seventh Circuit holding that contribution "in connection with a federal statutory scheme is a question governed solely by federal law." *Id.* at *1.

Goduco correctly points out that the Eleventh Circuit held that an indemnification state law claim was not preempted by the Federal Copyright Act. Foley v. Luster, 249 F.3d 1281 (11th Cir.2001). The Foley court, however, only addressed the question as to whether the federal statute preempted state law under the Supremacy Clause, leaving open the question

---

[1]Goduco argues that Salton, Inc. v. Philips Domestic Appliances and Personal Care B.V., 391 F.3d 871, 877 (7th Cir.2004), supports its position that contribution claims are allowed in copyright actions. Salton states, "Under the principle of joint and several liability, which governs not only the common law tort of misappropriation of trade secrets but also the federal statutory tort of copyright infringement, the victim of a tort is entitled to sue any of the joint tortfeasors and recover his entire damages from that tortfeasor. The defendant may have a right to contribution (*i.e.,*to a sharing of the pain) from the other tortfeasors..." This *dicta,* however, appeared in a general discussion of failure to join indispensable parties under Rule 19. Additionally, the court's use of "may" is not enough to show that the Seventh Circuit would hold that contribution claims are allowed in copyright actions.

as to whether substantive law authorizes such a claim for indemnification (or contribution). Because the absence of a constitutional bar is not the same as the presence of a right to bring a claim (Melville B. Nimmer and David Nimmer, Nimmer on Copyright, § 12.04[C][4], at 12-128-29), we must analyze the claim under <u>Northwest Airlines</u>, asking whether the Copyright Act itself creates a right of contribution, or whether the right of contribution inheres as a matter of federal common law. Under the analysis below we conclude that it does not and therefore the motion to dismiss Goduco's cross-claim for contribution is granted.[2]

A cause of action for copyright infringement runs only in favor of "[t]he legal or beneficial owner of an exclusive right under a copyright." 17 U.S.C. § 501(b). Thus, there is no explicit right of contribution in favor of co-infringers under the Federal Copyright Act.

As copyright law has developed through federal statute, the "remedies for infringement 'are only those prescribed by Congress.'" <u>Sony Corp. of America v. Universal City Studios, Inc.</u>, 464 U.S. 417, 431 (1984). Therefore, we pause to assess congressional intent to determine whether there is an implicit right of contribution in the Federal Copyright Act. In determining whether Congress intended to create a private remedy of contribution, the Supreme Court directs us to assess the statutory language, legislative history, purpose of the statutory scheme, and likelihood that Congress intended to supercede state remedies. <u>Northwest Airlines</u>, 451 U.S. at 1580. Here, neither the language of the statute nor the legislative history indicates that Congress intended to create a private right of contribution. In fact, both are silent on the issue of contribution. Since initially setting forth a four-part test for finding an implied private

---

[2]Goduco argues that because all of the parties to this case are located in Illinois, the court should apply Illinois law, pointing to a body of Illinois law allowing for contribution among joint tortfeasors. Goduco, however, failed to provide any case law in support of that position, and failed to address the implications of <u>Donovan's</u> holding that contribution for violation of a federal statute should be treated as a matter of federal, not state, law.

right of action in <u>Cort v. Ash</u>, 422 U.S. 66 (1975), and subsequently focusing more specifically on congressional intent, the "Supreme Court has thus set the default against inferring private rights of action in legislation silent on the subject." <u>Peterson v. P.H.S.A.</u>, 1999 WL 63679, *1 (N.D.Ill. 1999).

Additionally, we note that the defendants are not within the class of persons the federal law was designed to protect. Such a finding weighs against finding an implied right of contribution. *See* <u>Northwest Airlines</u>, 451 U.S. at 91-92; <u>Ho-Chunk Nation v. J.C. Penney Co., Inc.</u>, 1999 WL 495899, at *4; <u>Mollfulleda v. Phillips</u>, 882 F.Supp. 689, 696 (N.D.Ill.1994).

Finally, the Supreme Court has held that "[t]he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." <u>Northwest Airlines</u>, 451 U.S. at 1583-84. As the federal Copyright Act provides for specific and comprehensive remedies for infringement (17 U.S.C. §§ 501-506, 509), we believe that Congress must have intentionally omitted the right of contribution. *See* <u>Johnston v. Smith L</u>, 1997 WL 584349, *2 (N.D.Ga.1997).

Where there is neither explicit nor implicit right of contribution in a federal statute, the right might have been fashioned in federal common law. <u>Northwest Airlines</u>, 451 U.S. at 90. Such judicial decision-making is appropriate, however, only in limited circumstances, such as admiralty law, where it is necessary to protect uniquely federal interests, or where Congress has given the courts power to develop substantive law. <u>Texas Indus., Inc. v. Radcliff</u>, 451 U.S. 630, 640 (1981). Therefore, we find no right of contribution in an action alleging violation of the federal Copyright Act.

For the reasons set forth above, Russell's and Welter's motions for dismissal of

Goduco's cross-claim for contribution are granted.

## II. Welter's Cross-Claims

The Welter defendants deny any liability to Equity and enter cross-claims against both Russell and Goduco. Welter alleges intentional misrepresentation, negligent misrepresentation, negligence and contribution against Russell, and negligent misrepresentation, negligence and contribution against Goduco. Russell makes a motion to dismiss the intentional misrepresentation claim under Rule 9(b) and all claims pursuant to 12(b)(6). Goduco makes a motion to dismiss the negligent misrepresentation claim pursuant to 12(b)(6). For the reasons stated below, we deny Russell's motion as it applies to intentional misrepresentation and grant the motions as they apply to negligent misrepresentation, negligence and contribution.

## BACKGROUND

As noted above, in analysis pursuant to a 12(b)(6) motion, we must accept the complaint's well-pleaded factual allegations as true, including the inferences reasonably drawn from them. Gibson v. City of Chicago, 910 F.2d at 1520. Therefore, the following facts have been drawn solely from Welter's cross-claims.

In March 2004, the Welters viewed a model home constructed by Russell, and Russell informed them that he could build a home similar to the model.[3] Russell thereafter contracted with Goduco to prepare architectural plans for the Welter residence. Through oral and

---

[3] In answering Equity's complaint, Welter admits to walking through a model home, which agents of Equity Builders represented to be the "Bordeaux." (Goduco's ans. and cross-claims at 7). In the cross-claim section, however, Welter states that they viewed a model home constructed by defendant Russell (id. at 14). It is unclear whether Welter walked through both an Equity model home and a Russell model home, or whether one statement is mistaken. Because our analysis occurs within the context of a motion to dismiss the cross-claims, we will look only at the facts stated in the cross-claims.

written representations, Goduco and Russell stated that the architectural design was an original work and did not infringe on any of Equity's work. Russell was aware that the plan infringed on the plaintiff's copyright. Based on Goduco's and Russell's representations, the Welters accepted the construction and purchase of the Welter residence and thus suffered injury.

## II. Claim One: Intentional Misrepresentation

Russell moves for dismissal of Welter's cross-claim of intentional misrepresentation pursuant to Rule 9(b) for failure to plead a fraud claim with particularity and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The motion is denied.

Under Illinois law, the elements of an intentional misrepresentation claim are (1) making a false statement of material fact; (2) known or believed to be false by the party making the statement; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. Europlast, Ltd. v. Oak Switch Systems, Inc., 10 F.3d 1266, 1272 (7th Cir.1993) (citing Soules v. General Motors Corp., 402 N.E.2d 599, 601 (Ill.1980)). Additionally, the party alleging such misrepresentation must show that its reliance on the statement was justified. Stickle Enterprises, Ltd. v. CPC Intern. Inc., 1997 WL 49177, *3 (N.D.Ill.1997).

Russell argues that Welter's pleadings in regard to intentional misrepresentation do not satisfy the requirements of Rule 9(b),[4] which states that "the circumstances constituting fraud

---

[4]Claims for intentional misrepresentation must satisfy the requirements of Rule 9(b). Adamczyk v. Lever Bros. Co., Div. of Conopco, 991 F.Supp. 931, 939 (N.D.Ill.1997); Cokenour v. Household Intern., Inc., 2004 WL 725973, *6 (N.D.Ill.2004).

or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." FED.R.CIV.P. 9(b). The Seventh Circuit has interpreted Rule 9(b) to require the plaintiff to plead circumstances – "the who, what, when, where, and how" – in detail. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990). *See also* Vicom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 771 (7th Cir.1994) ("the reference to 'circumstances' in the rule requires 'the plaintiff to state 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'"). The heightened pleading requirement in fraud cases was implemented to protect defendants' reputations, prevent fishing expeditions, and provide adequate notice to defendants. Ward Enterprises, Inc. v. Bang & Olufsen, 2003 WL 22859793, *1-2 (N.D.Ill.,2003).

Rule 9(b), however, does not negate the general pleading requirements of Rule 8, which requires only a short and plain statement of a claim. Stickle Enterprises, 1997 WL 49177 at *3; Coca-Cola Co. Foods Div. v. Olmarc Packaging Co., 620 F.Supp. 966, 973 (D.C.Ill.,1985). Thus, it does not require Welter to plead evidence. Coca-Cola, 620 F.Supp. at 973.

Russell first argues that the Welter claim did not state the words or text of Russell's allegedly false statements. The claim states, "In March and April 2004, Ronald R. Russell, Jr. specifically represented both orally and in writing to the Welter Defendants that the Russell Plan represented an original work and did not infringe on any work of the Plaintiff. Furthermore, R. Russell Builders, Inc. itself represented that the Russell Plan is an original work by designating a copyright notice thereon." (Welter cross-claim, ¶ 7). Although vague, such an allegation satisfies Rule 9(b)'s requirements as interpreted by the Seventh Circuit. *Cf.* Iles v. Swank, 2005 WL 1300773, *5 (N.D.Ill.2005) ("complaint's repeated treatment of all

defendants as a whole, without attributing any specific misrepresentations to specific defendants, fails to satisfy the rigors of Rule 9(b)"). Russell claims that Welter was required to recount the statements in verbatim, to show that they were actionable material facts, rather than non-actionable legal opinions. (Russell mem.,supp.mot.dismiss.Welter. Claims at 5). Such an argument is better suited for a summary judgment motion and has no place in a motion to dismiss, where we must take Welter's claims as true, including all inferences drawn from them. *See generally* <u>Coca-Cola</u>, 620 F.Supp. at 973-74.

Next, Russell argues that Welter's claim cannot assert a conclusory allegation that Russell intentionally concealed the copyright infringement in the face of an alternative pleading denying any infringement. Russell concedes, however, that Rule 9(b) allows a plaintiff to plead knowledge generally, rather than with particularity. Additionally, Rule 8(a) allows for alternative pleading. *See* <u>Natural Juice Co. v. Orchid Island Juice Co.</u>, 2004 WL 1093721, *8 (N.D.Ill.2004) ("Since remedies may be pleaded in the alternative, requests for inconsistent declarations appear to be condoned by the Federal Rules of Civil Procedure, and therefore cannot be stricken at the pleadings stage.").

Finally, Russell argues that Welter's claim did not sufficiently identify the detrimental steps Welter took in reliance on Russell's statements, and did not plead justified reliance. Although a plaintiff must prove its reliance was justified, it is not necessary to plead justified reliance in so many words. *See, e.g.*, <u>Stickle Enterprises</u>, 1997 WL 49177 (denying a motion to dismiss a fraud claim for failure to plead with particularity, where plaintiff did not plead justifiable reliance); <u>Steinberg v. Chicago Med. Sch.</u>, 69 Ill.2d 320, 332 (Ill.1977) ("Misrepresentation of an existing material fact coupled with scienter, deception, and injury are more than adequate"). Rather, the plaintiff must plead facts indicating its reliance on the

misrepresentation was justified. <u>Credit Ins. Consultants, Inc. v. Republic Fin. Services, Inc.</u>, 1993 WL 388659, *9 (N.D.Ill.1993). Under Illinois law, a plaintiff justifiably relies on a defendant's statement of facts where "circumstances were such to make it reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation." In <u>Quote Corp. v. Cole</u>, 2000 WL 1222211, *3 (N.D.Ill.2000). Welter sufficiently pleads facts tending to show justified reliance. Thus, Welter's cross-claim for intentional misrepresentation satisfies the pleading requirements of Rule 9(b).

Russell also argues that Welter's complaint should be dismissed because the statements upon which Welter relied are unactionable legal opinions. This is essentially the same argument Russell made above in arguing that Welter must recount Russell's statements to determine if they are actionable. Once again, Russell confuses the allegations necessary to survive a motion to dismiss on the pleadings with the proof necessary to survive a summary judgment motion, where the entire factual record has been reviewed. *See* <u>Consolidated Freightways Corp. v. Niedert Terminals, Inc.</u>, 612 F.Supp. 1391, 1397 -1398 (D.C.Ill.1985).

Without further discovery, it is impossible to find that Welter "could prove no set of facts entitling him to relief," the standard under which a 12(b)(6) motion is measured. <u>Triad Assoc., Inc., v. Chicago Housing Auth.</u>, 892 F.2d 583, 586 (7th Cir.1989). With further development of the record, we could find that Russell did make false factual statements to Welter. Alternatively, a factual misrepresentation in the context of an opinion as to the validity of a copyright could be enough to sustain an intentional misrepresentation claim. *See* <u>Abbott Lab. v. Diamedix Corp.</u>, 1998 WL 901671, *6 (N.D.Ill.1998) ("there is no reason why a factual misrepresentation in the context of an opinion as to the validity of a patent could not ripen into a fraudulent misrepresentation"). Such an analysis requires development of the full factual

record, which is not necessary at the pleading stage. Therefore, we deny Russell's motion to dismiss Welter's counter-claim.

### III.  Claim Two: Negligent Misrepresentation

Russell and Goduco move to dismiss Welter's cross-claim for negligent misrepresentation under the Moorman doctrine. Additionally, Russell argues that the claim fails because Welter has not identified a false statement of fact. The motions to dismiss are granted.

To prevail on a negligent misrepresentation claim a plaintiff must plead and prove (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; (6) when the party making the statement is under a duty to communicate accurate information. Roe v. Jewish Children's Bureau of Chicago, 790 N.E.2d 882, 893 (Ill.App.Ct.2003). *See also* Iles, 2005 WL 1300773 at *6.

We first address Russell's contention that the negligent misrepresentation claim must be dismissed because it identifies legal opinion, as opposed to material fact. That argument fails for the same reason it failed under the intentional misrepresentation analysis.

We now turn to Russell's and Goduco's arguments that Welter's action is barred by the Moorman doctrine. In Moorman, the court held that "plaintiff cannot recover for solely economic loss under the tort theories of strict liability, negligence and innocent misrepresentation." Moorman Mfg. Co. v. National Tank Co., 91 Ill.2d 69, 91 (Ill. 1982). The court explained by stressing the different policy rationales between contract and tort law: "Tort theory is appropriately suited for personal injury or property damage resulting from a sudden

or dangerous occurrence.... The remedy for economic loss, loss relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause, on the other hand, lies in contract." *Id.*, at 450. Here, Welter does not dispute that it is seeking damages for economic losses, but asserts that defendants Goduco and Russell fall within a <u>Moorman</u> exception – they are in the business of supplying information for the guidance of others and, in their business transactions, they made negligent representations. *See Id.*, at 452.

In determining whether a defendant falls within that <u>Moorman</u> exception, we must do a case-by-case analysis. Specifically, to find such an exception we must look at whether (1) defendant is in the business of supplying information for the guidance of others in their business dealings; (2) defendant provided information that constitutes a misrepresentation; and (3) defendant supplied the information for guidance in the plaintiff's business dealings. <u>Tolan and Son, Inc. v. KLLM Architects, Inc.</u>, 719 N.E.2d 288, 296 (Ill.App.Ct.1999). The Seventh Circuit, in summarizing Illinois case law on the subject, gives further guidance to our analysis: "The two critical defining features were enunciated by the court in <u>Black, Jackson and Simmons</u>: 'First, the defendant must supply the information in the course of his business and second, the information must be supplied for the guidance of others in their business transactions.' 64 Ill.Dec. at 732, 440 N.E.2d at 284. The court added a clarification regarding the second requirement; the information supplied must be 'for the guidance of others in their business relations with *third* parties.' *Id.*" <u>Rankow v. First Chicago Corp.</u>, 870 F.2d 356, 362-363 (7th Cir.1989). At issue here, however, is information supplied for guidance in Welter's business relations with Russell and Goduco, not third parties.

Russell and Goduco contend that the Illinois Supreme Court's rulings in <u>2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.</u>, 555 N.E.2d 346 (Ill.1990)

and <u>Fireman's Fund Ins. Co. v. SEC Donohue, Inc.</u>, 679 N.E.2d 1197 (Ill.1997), prove that, under <u>Moorman</u>, architects and builders generally cannot be held liable for economic loss in tort.  Although the bar is not absolute, "if the intended end result of the plaintiff-defendant relationship is for the defendant to create a product, a tangible thing, then the defendant will not fit into the business of supplying information negligent misrepresentation exception." <u>Tolan and Son</u>, 719 N.E.2d at 296.

        Goduco and Russell do not fall within the <u>Moorman</u> exception.  While both defendants supplied information to Welter, it was information given in the context of selling an architectural design and building.  The primary transaction was the construction and sale of the tangible product, and therefore is outside the <u>Moorman</u> exception.  *See* <u>2314 Lincoln Park West</u>, 555 N.E.2d 346 (<u>Moorman</u> exception did not apply to information provided as incidental to architects' design).  Welter's contention that Goduco and Russell supplied both information and an end product is not enough to take it out of <u>Moorman's</u> bar.  Where, as here, the primary purpose of the information supplied is to guide purchasers in making their decisions about buying the end product from the same actors, the seller is not in the business of supplying information.  *Cf.* <u>Rankow</u>, 870 F.3d 356 (finding that the defendant bank did fall within the <u>Moorman</u> exception because the bank supplied plaintiffs with information that guided them in business with third parties); *see* <u>Canel v. Lincoln Nat. Bank</u>, 1998 WL 1760544, *10 (N.D.Ill.,1998) (distinguishing <u>Rankow</u> because defendant supplied information concerning an isolated one-time merger, as opposed to ongoing financial assistance).  In this case, Welter relied on the information regarding copyright infringement and original design for the sole purpose of deciding whether or not to purchase the design and construction from the information suppliers.

Finally, we note that this court decided an analogous case earlier this year. In First Magnus Financial Corp. v. Dobrowski, 2005 WL 1459198 (N.D.Ill.,2005), the plaintiff argued that the defendant title companies were in the business of supplying information for the guidance of others in their business transactions. In determining whether the defendant fell into the Moorman exception, we queried whether defendants were in the business of supplying information for the guidance of others, or whether the information they supplied was merely ancillary to the sale or in connection with the sale of merchandise. *Id.*, at *1. In holding that defendant title insurers were not in the business of supplying information, we stated that "the title insurer's product is not information concerning liens or encumbrances on the title; the product is the insurer's assumption of the risk that other encumbrances on the title may exist. Therefore, the title commitment is ancillary to the insurance company's business." *Id.*, at *2. The case before us now presents a similar issue: neither Russell's nor Goduco's product was its assurance that its design would be free of copyright infringement claims; its product was the design and construction of the home.

For all of the reasons set forth above, we find that Welter's cross-claim for negligent misrepresentation is barred by the Moorman economic loss doctrine. Therefore, we grant Russell's and Goduco's motions to dismiss that claim. Their remedy, if any, must derive from contract, not an unintentional tort.

## IV. Claim Three: Negligence and Contribution

Finally, Russell makes a motion to dismiss Welter's cross-claim for negligence and contribution, again arguing that Welter cannot collect damages for purely economic losses under the Moorman doctrine. Additionally, in a footnote in Goduco's reply brief, Goduco argues that this court should apply consistent decisions regarding contribution, and therefore,

as we granted Russell's motion to dismiss Goduco's contribution claim, the same should hold true for Welter's contribution claim. The motions to dismiss are granted.

For the reasons set forth in the analysis of the negligent misrepresentation claim, we find that Welter's negligence claim is barred by the Moorman economic loss doctrine.

Additionally, for the reasons set forth in the analysis of Goduco's cross-claim for contribution, we find that a claim for contribution for violations of the federal Copyright Act is a matter of federal law. Therefore, Welter's argument that Cirilo's, Inc. v. Gleeson, Sklar & Sawyers supports its claim for contribution holds no sway in this action. Cirilo's, Inc., 154 Ill.App.3d 494 (1987) (finding that an action under the Illinois Contribution Act was not barred by Moorman). Because there is no right of contribution under the federal Copyright Act, there is no right of contribution for any defendant in this case.

We grant Russell's motion to dismiss Welter's cross-claim for negligence and contribution, and extend that holding to Goduco.

## CONCLUSION

For the foregoing reasons, Goduco's claim against Russell and Welter for contribution is dismissed; Russell's motion to dismiss Welter's claim for intentional misrepresentation is denied; and Welter's claims against Russell and Goduco for negligent misrepresentation, negligence, and contribution are dismissed.

JAMES B. MORAN
Senior Judge, U. S. District Court

Oct. 17 , 2005.